### DOWNING et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. · February 25, 1903.)

#### No. 103.

**1. Customs Duties—Old Cannon.**

    Old cannon, made of composition metal, and useless as artillery, but salable as relics and souvenirs, are dutiable under Tariff Act July 24, 1897, par. 193, 30 Stat. 167, c. 11 [U. S. Comp. St. 1901, p. 1645], as manufactures of metal, and are not free of duty as "old brass," within para-

graph 505, 30 Stat. 196 [U. S. Comp. St. 1901, p. 1682], or as "composition metal," within paragraph 533, 30 Stat. 197 [U. S. Comp. St. 1901, ᐟ p. 1682].

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 116 Fed. 779.

Walter H. Bunn, for appellants.
D. Frank Lloyd, for the United States.

Before WALLACE and COXE, Circuit Judges.

WALLACE, Circuit Judge. The duties in controversy were assessed upon certain old cannon imported from Cuba, made of metal of which copper was the component material of chief value. The importations were classified for duty under paragraph 193 of the tariff act of July 24, 1897, 30 Stat. 167, c. 11 [U. S. Comp. St. 1901, p. 1645], which subjects to an ad valorem rate of 45 per centum "articles or wares not specially provided for, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partially or wholly manufactured."

The importers claimed them to be exempt from duty under paragraph 533 of the same tariff act (30 Stat. 197 [U. S. Comp. St. 1901, p. 1682]), which places on the free list "old copper, fit only for manufacture, clippings from new copper, and all composition metal of which copper is a component material of chief value, not specially provided for in this act," or, in the alternative, under paragraph 505 (30 Stat. 196 [U. S. Comp. St. 1901, p. 1682]), which places on the free list "brass, old brass, clippings from brass or Dutch metal, all the foregoing fit only for manufacture."

The board of General Appraisers and the Circuit Court decided that the importations were correctly classified for duty under paragraph 193.

The evidence shows that the cannon were sold by the Spanish authorities in Cuba coincidentally with the evacuation of that island. They were useless as artillery, many of them being of antiquated types, and more of them being so deteriorated by age and use as to be unsafe and of no value, except for the metal of which they were made. Some of them were valuable as relics and souvenirs, and were salable as such. They were appraised and classified indiscriminately, no distinction having been made between those having a value as relics and those having only a value as old metal, and the protest of the importers was not addressed to any such distinction. The evidence further shows that the cannon were made of "composition metal," that term being the commercial designation for all composite metals of copper, tin, lead, and spelter containing 70 per cent. or more of copper; also that they were not "old brass" within the commercial meaning of that term. It further shows that "composition scrap" is the commercial designation which includes old cannon and various other articles made of composition metal which are dealt in by the old-metal trade.

The decisions of the Board of General Appraisers and of the Circuit. Court proceeded upon the reasoning that the cannon were manufactured articles, and had not lost their character as manufactured articles by their age or their unfitness for their normal use. With this we agree. We are of the opinion that, so long as a manufactured article retains its original characteristics sufficiently because of them to be a vendible commodity, it cannot, by reason of its age or unfitness for its original use, be relegated to the category of crude materials or unmanufactured things. By this criterion some of the importations retained their dutiable character as manufactured articles, and as such, as they were composed in part of copper, were within the enumeration of paragraph 193, unless they were dutiable under some other provision of the tariff act. It is conceded that they were not otherwise specially provided for, unless as "composition metal," within the meaning of paragraph 533. We think that the term as there used does not exempt that metal from duty when, in the form in which it is imported, it has been advanced beyond that in which it is used for manufacturing purposes. The paragraph does not in terms exempt old composition metal or composition scrap from duty. The qualifying term "old" is applied in the paragraph only to copper, and doubtless exempts from duty copper which has been manufactured before into articles that from age or use have become worthless except as metal, and are dealt in as metal by the old-metal trade. By this and other provisions of the free list brass and copper, and also composition metal, are exempt from duty, and so, also, are old brass and old copper, when fit only for remanufacture; but old composition metal is not mentioned. The importations, although made of composition metal, were not composition metal within the meaning of the paragraph. They were manufactured articles, and many of them were useful and vendible for other than manufacturing purposes. Whether those which had by deterioration ceased to be of any value, but their metal value, could be regarded as composition metal, is a question which does not arise. It would have arisen if they had been segregated from the others for the purposes of classification and protest. They probably would have been free of duty if old composition metal, or composition scrap, had been included in the enumeration of paragraph 533. Certainly those importations which had an intrinsic and commercial value, aside from their metal value, were not old composition metal, or composition scrap.

As the case has been presented, we do not find any error in the record, and the decision of the Circuit Court is affirmed.