David **STUDNER** et al., Plaintiffs,

v.

**UNITED STATES**, Defendant.

C.D. 3865; Protests 60/24477–7127–60, etc.

United States Customs Court,
Second Division.
July 8, 1969.

See also, Cust.Ct., 295 F.Supp. 289.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz, New York City, of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Velta A. Melnbrencis, New York City, trial atty.), for defendant.

Before RAO, FORD and NEWMAN, Judges.

RAO, Chief Judge:

The merchandise involved herein is described on the invoices and entries as "old printing blocks" or as "wooden printing blocks". It was assessed with duty at 40 per centum ad valorem under paragraph 395 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas.Dec. 305, T.D. 51802, as print blocks or print rollers, not specially provided for, of whatever material composed, used for printing, stamping, or cutting designs.

Two claims are made in the protests, as amended: That the merchandise is properly dutiable at 4 per centum ad valorem under paragraph 1555, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas.Dec. 121, T.D. 52739, as waste, or that it is dutiable at 19 per centum ad valorem under paragraph 397, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as articles, whether partly or wholly manufactured, composed wholly or in chief value of base metal.

The pertinent provisions of the Tariff Act of 1930, as modified, are as follows.·

Paragraph 395, as modified by T.D. 51802:
Print blocks, * * * of whatever material composed, used for printing, stamping or cutting designs ................................... 40%· ad val.

Paragraph 1555, as modified by T.D. 52739:
Waste, not specially provided for ................ 4% ad val.

Paragraph 397, as modified by T.D. 54108:
Articles or ware not specially provided for, whether partly or wholly manufactured:
\* \* \* \* \* \* \* \*

Composed wholly or in chief value of * * * base metal (except lead), but not plated with platinum, gold or silver, or colored with gold lacquer:
\* \* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:
\* \* \* \* \* \* \*

Other * \* * ...................... 19% ad val.

This case has been submitted on a stipulation of fact, reading as follows:

1. That the involved merchandise, which was classified within paragraph 395, Tariff Act of 1930, as modified, consists of old and used print blocks, incapable of use for its original purpose of printing. Without being manipulated in any manner, it is imported into this country.

2. That the involved merchandise in its imported condition is used and sold as wall decorations.

3. That the plaintiff claimed said merchandise is dutiable at 4 per centum ad valorem within paragraph 1555, Tariff Act of 1930, as modified, while the defendant claims the merchandise is dutiable at 19 per centum ad valorem within paragraph 397, of said Act, as articles not specially provided for, partly or wholly manufactured, wholly or in chief value of base metal, but not plated with platinum, gold, or silver or colored with gold lacquer.

4. That the involved merchandise is, in fact, wholly or in chief value of base metal, not plated with platinum, gold, or silver, or colored with gold lacquer.

From this stipulation it is evident that the merchandise was erroneously classified under paragraph 395, as modified, since the articles are no longer used or suitable for use for printing, stamping, or cutting designs. Defendant in fact does not claim that this classification should be sustained.

Plaintiffs urge that since the involved blocks were not processed in any manner prior to importation, they cannot be considered manufactured articles but are waste. Defendant contends that since they are neither items fit only for remanufacture nor refuse material resulting from a manfacturing process, they are not "waste" within the meaning of the tariff act and since they are in a "manufactured state", they are classifiable as articles, not specially provided for, whether partly or wholly manufac-

tured, wholly or in chief value of base metal, under paragraph 397, as modified. The latter claim is the same as plaintiffs' alternate claim.

The principal issue is whether old or used print blocks, incapable of use for their original purpose of printing, but which were sold and used for a new purpose, as wall decorations, are "waste" within the meaning of the tariff act, as modified.

The classical definition of waste is found in Patton v. United States, 159 U.S. 500, p. 503, 16 S.Ct. 89, p. 90, 40 L.Ed. 233 (1895), where the court stated:

> * * * The prominent characteristic running through all these definitions is that of refuse, or material that is not susceptible of being used for the ordinary purposes of manufacture. It does not presuppose that the article is absolutely worthless, but that it is unmerchantable and used for purposes for which merchantable material of the same class is unsuitable.

Another oft quoted statement appears in Harley Co. v. United States, 14 Ct. Cust.Appls. 112, T.D. 41644 (1926), at page 115:

> In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture.
> * * *

In that case and in a number of subsequent cases the merchandise consisted

of worn-out or obsolete articles no longer suitable for their original purposes, which were in fact used or to be used for remanufacture into something else:

Harley Co. v. United States, *supra* (rags of worn-out wearing apparel fit for nothing commercially except to be remanufactured—some into wiping rags, some into paper, and some into other commodities).

United States v. C. J. Tower & Sons, 31 CCPA 185, C.A.D. 271 (1944) (old, discarded junk X-ray films in chief value of cellulose acetate which had been exposed and developed and were no longer fit for use in taking X-ray or other pictures).

United States v. Katzenstein & Keene et al., 16 Ct.Cust.Appls. 93, T.D. 42754 (1928) (rags which were worn out by reason of use or wear and tear unsuitable for the purpose for which they were originally made and used for paper making).

The Midwest Waste Material Co. et al. v. United States, 28 Cust.Ct. 8, C.D. 1382 (1951) (woven strips of jute originally designed for use by the armed forces in the garnishing of nets for camouflage purposes, but no longer devoted to that use and consumed for their fiber content either for the making of jute felt or as paper stock).

Most imported merchandise classified as waste appears to be in the so-called "new waste" category. See Summary of Tariff Information 1921, page 1212; Summary of Tariff Information, 1929, page 2153; Summaries of Tariff Information, 1948, volume 15, part 9, page 136. The 1948 publication states, for example, "Wastes are by-products (usually minor) not produced for their own sake." In the case of such "new waste" it has been held that merchandise which is usable in its imported condition without further manufacture is classifiable as waste. National Carloading Corp. v. United States, 22 Cust.Ct. 328, Abstract 53220 (1949); Cia Algondonera v. United States, 23 CCPA 42, T.D. 47686 (1935); Koons, Wilson & Co. v. United States, 12 Ct. Cust.Appls. 418, T.D. 40589 (1924); W.

R. Grace & Co. v. United States, 9 Cust. Ct. 59, C.D. 662 (1942).

In the *National Carloading* case, the merchandise consisted of pieces of sisal fiber which fell off in the process of manufacturing and were unsuitable for use in manufacturing shoes, bags, or brushes. They were used in their imported condition as stuffing for furniture, mattresses, and the like. The court held they were waste, stating (p. 329):

A waste material is not precluded from classification as a waste merely because it may be used in its imported condition without being subjected to further manufacture after it reaches this country. * * *

In the *Cia Algondonera* case, the merchandise consisted of cottonseed hulls which were a necessary by-product produced in the course of the manufacture of cottonseed oil and meal. They were not further manufactured but were mixed with meal in small percentages and fed to cattle. The court held that they were waste, stating (p. 45):

* * * The cottonseed hulls are a by-product of the oil mills, necessarily produced in such oil mill operations. The fact that they are a valuable product, and are a distinct commercial entity, does not militate against the view that they are, in a tariff sense, waste.

In Koons, Wilson & Co. v. United States, *supra*, it was held that beet pulp, the dried residue from sugar beets after extraction of sugar, used for cattle feed, was dutiable as waste, and in W. R. Grace & Co. v. United States, *supra*, a by-product obtained as a result of manufacturing buttons from tagua nuts, used as a filler in explosives, was classifiable as waste.

The issue here is whether an old and used article no longer suitable for its original purpose and which would be considered waste if fit only for remanufacture (Pelton Enterprises, Inc., and Hoyt, Shepston & Sciaroni v. United States, 44 Cust.Ct. 381, Abstract 63935 (1960); D. M. Studner v. United States,

50 Cust.Ct. 149, C.D. 2404 (1963)) must be considered something else because it can be used for another purpose without remanufacture. Obviously, in most instances articles no longer suitable for their original purpose are usable for another only after remanufacture. Thus the issue presented here is an unusual one and apparently never squarely presented to the courts.

In P. Silverman & Son v. United States, 27 CCPA 324, C.A.D. 107 (1940), the merchandise consisted of "Old Woolen Dryer Felt Waste", that is, so-called Palmer or sanforizing blankets, which were in a worn-out condition and no longer serviceable for their original purpose. When new, they were used in textile finishing operations, but when discarded, they had become so worn and burnt by heat and friction as to render them unsuitable for their original purposes. The trial court stated that the record established that the merchandise was fit only for use, after manipulation, for wiping and abrasive purposes in the steel and optical glass industries. The appellate court noted that one of the special uses shown by the record was in the steel industry where the merchandise was used to brush away the oxidation of steel before it went into the roll. In order to be used for that purpose, the merchandise had to be cleaned of excessive grease and rust. The merchandise was held to be classifiable as waste, not specially provided for, rather than as wool waste.

While the court did not determine what constituted "waste", it laid down no requirement that fitness for remanufacture was necessary, and, by implication, included as waste, worn articles which had new uses after some manipulation, which may have been no more than cleaning.

In another series of cases it has been held that burlap bags which had been slit to remove their contents and were unfit for use as bags but were used as patches or as bale wrappers were dutiable as waste bagging. Rachman Bag Co., Inc. v. United States, 57 Cust.Ct. 465, C.D. 2838 (1966), and cases cited. The court there stated (p. 469):

From the foregoing, it is evident that whether used bagging is to be regarded as bags or as waste bagging for tariff purposes depends, in the first instance, upon its condition at the time of importation and, in the second place, upon a comparison between its use in its original state and its susceptibility of use in its imported condition. Where, as here, the material imported is so deteriorated from its original form as to be incapable of use as containers, and the use to which it is commercially and practically adapted differs substantially therefrom, it is such a waste product as to fall naturally within the provisions of paragraph 1617, *supra*, for waste bagging.

We are of the opinion that the split bags here in issue must be so treated. In their imported condition, they cannot serve as containers. The mutilation they have undergone renders them unfit for such use, and the evidence establishes that they are not practically capable of reuse as bags. Indeed the testimony suggests that the subject split bags have been so drastically damaged in the removal of their original contents as to be incapable of being restored to their original condition.

In the instant case, the print blocks were incapable of use for their original purpose and were "waste" as far as their use in printing was concerned. They would have been considered "waste" if another use had been found for them that involved remanufacture. The use to which they are in fact put differs substantially from their original use. "New waste" is classifiable as waste even though used for a different purpose without further manufacture. It would be illogical to hold that "old waste", such as this merchandise, has been taken out of the classification, waste, merely because it can be used for another purpose without remanufacture.

The provision for waste, not specially provided for, in paragraph 1555 of the

Tariff Act of 1930, is without other limitation. It does not contain a proviso, such as that in paragraph 301, for example, "That nothing shall be deemed scrap iron or scrap steel except second-hand or waste or refuse iron or steel fit only to be remanufactured." See also paragraph 394 (old and worn-out zinc, fit only to be remanufactured); Public Law 81–869, 64 Stat. 1093, as amended; and items 911.10–911.12, Tariff Schedules of the United States. The restriction "fit only to be remanufactured" also occurs in earlier tariff acts. See paragraph 301, Tariff Act of 1922; paragraph 518, Tariff Act of 1913; paragraph 118, Tariff Act of 1909. It would appear, therefore, that when Congress intended to limit the terms "waste" or "scrap" to merchandise fit only for re-manufacture, it so stated.

We conclude that the printing blocks involved herein are classifiable as waste under paragraph 1555 of the Tariff Act of 1930, as modified.

For the reasons stated, the protests are sustained and the merchandise is held properly dutiable at 4 per centum ad valorem under paragraph 1555 of the Tariff Act of 1930, as modified, as waste, not specially provided for. Judgment will be entered accordingly.

FORD, J., concurs.

NEWMAN, Judge:

I must dissent.

The problem presented in this case, although narrow and relatively abstract, involves a long standing principle in the classification of merchandise for tariff purposes as "waste." I am compelled to disagree with the decision reached by the majority because I believe that, under the law and facts, such decision represents an unwarranted departure from the common meaning of the term "waste" as judicially evolved over the years.

Before discussing the merits, it would be desirable to restate the basic issue presented by the agreed statement of facts, and to summarize the opposing arguments of counsel:

Are print blocks which have become incapable of use for their original purpose (viz., printing), but are nevertheless sold and used for another purpose (viz., wall decorations), *without remanufacture or manipulation of any kind,* classifiable as "waste" within the purview of paragraph 1555?

Briefly, it is plaintiffs' position that when the imported articles became unusable for printing they became waste; and since they were not processed in any manner prior to importation, they cannot be considered a manufactured article, but they remain waste. Further, plaintiffs contend that the fact the articles were used in their imported condition as wall decorations does not preclude their consideration as "waste" for tariff purposes.

Defendant's position may be summed up by quoting their argument (Brief, page 4):

* * * paragraph 1555 is not applicable because, according to the definitions evolved in various court decisions, * * * waste is either a manufactured article which has become useless and *is fit only for remanufacture* or is *refuse material,* resulting from a manufacturing process, commercially unfit without remanufacture for the purpose for which the original material was suitable. (See United States v. C. J. Tower & Sons, 31 CCPA 185, C.A.D. 271.) Since the imported merchandise is fit for purposes *other* than remanufacture and is not refuse, it clearly is not waste. [Emphasis in original.]

I agree with defendant's contention. While over the years the courts have applied the provision for waste to a variety of imported merchandise, the definition of the term itself has remained basically unchanged. In my view, no new interpretation of "waste" is required here. The present case, however, is apparently one of first impression, in that the court has been asked to focus its attention upon that aspect of the definition of waste which requires that a manufactured article be "'fit only for remanufacture."

Harley Co. v. United States, 14 Ct. Cust.Appls. 112, T.D. 41644 (1926), cited in the majority opinion, is one of the leading decisions which have judicially defined waste. Our appellate court in United States v. C. J. Tower & Sons, 31 CCPA 185, C.A.D. 271 (1944), succinctly restated the definition of waste enunciated in *Harley*, as follows:

As appears from the quoted statement in the Harley Co. case, *supra*, there are two kinds of waste; namely, one, a manufactured article which, because of use or otherwise, has become useless for the purpose for which it was designed and is fit only for remanufacture; and, two, so-called "new waste," which is a refuse material resulting from a manufacturing process and which is commercially unfit without remanufacture for the purpose for which the original material was suitable.

In *Harley*, the court of appeals pointed out, additionally, that a manufactured article "which, *without remanufacture*, has a valuable practical use, is not waste or old junk." (14 Ct.Cust.Appls. at 115) [Emphasis added.] Significantly too, the appellate court held that if a manufactured article has a "value in addition to that of a mere material" it was not that class of waste designated in the tariff acts as "junk, old" (*id.* at 115). The foregoing rationale should be applied to the print blocks in the instant case, and that rationale precludes the classification of such merchandise as waste. Hence, these print blocks, which are incapable of use for printing, are nevertheless not waste, since they have a valuable practical use without remanufacture; and moreover they have a commercial value in addition to that of a mere material. Cf. Downing et al. v. United States, 122 F. 445 (CCA 2, 1903), wherein the court held that cannon which were useless as artillery, but saleable as relics and souvenirs, were properly dutiable as manufactures of metal, rather than free of duty as "old brass" or "composition metal," since they had not lost their character as manufactured articles by age

or unfitness for their normal use, and had an intrinsic and commercial value, aside from their metal value.

The definition of waste in *Harley* has been quoted and applied by this court on many occasions. For example, in Pelton Enterprises, Inc., and Hoyt, Shepston & Sciaroni v. United States, 44 Cust.Ct. 381, Abstract 63935 (1960), and D. M. Studner v. United States, 50 Cust.Ct. 149, C.D. 2404 (1963), this court explicitly found that the involved print rollers were fit only for remanufacture into something else (lamp bases, book ends, etc.), and by applying the definition of waste in *Harley*, held that such print rollers were waste.

Recently, in David M. Studner v. United States, 62 Cust.Ct., C.D. 3679, 295 F.Supp. 289 (1969), concerning this very plaintiff, the court commented as to *Pelton* and the prior *Studner* case, as follows:

" * * * In the *Pelton* case, both bearings were removed [from the print rollers] and thereafter the rollers were imported for manufacture into lamp bases or book ends.

The court held in that *Studner* case, stating at page 157:

It is the opinion of the court, in the instant case, that, as in the *Pelton* case, *supra*, the print rollers here in issue are "manufactured articles which have became useless for the original purpose for which they were made and fit only for remanufacture into something else" and, therefore, constitute waste in the tariff sense, as claimed by plaintiff.

It is quite clear to us that the used print rollers in the incorporated *Studner* case and the *Pelton* case were waste, as adjudicated, since they were found incomplete and useless for their original purpose and fit only for remanufacture into something else."

The common meaning of the term waste applied by the court in the *Pelton* and prior *Studner* cases was that very meaning pronounced in *Harley* and

*Tower*, and I am unable to agree that such meaning should now be rejected, as the majority has done in this case.

The majority states that, in the case of "new waste," it has been held that merchandise which is usable in its imported condition without further manufacture is classifiable as waste, citing National Carloading Corp. v. United States, 22 Cust.Ct. 328, Abstract 53220 (1949); Cia Algondonera v. United States, 23 CCPA 42, T.D. 47686 (1935); Koons, Wilson & Co. v. United States, 12 Ct.Cust.Appls. 418, T.D. 40589 (1924); W. R. Grace & Co. v. United States, 9 Cust.Ct. 59, C.D. 662 (1942). However, the print blocks are not "new waste." The above cited cases involved residue or by-product materials resulting from a manufacturing operation, and are not factually analogous to these print blocks. Thus, although it may be concluded from *National Carloading Corp.*, and other decisions involving "new waste," that a waste *material* cannot be denied classification under paragraph 1555 simply because it may be used without subjecting it to further manufacturing, such principle is not applicable here where the print blocks are neither a residue nor by-product of a manufacturing operation.

So-called old waste was described in *Tower* as a manufactured article which, because of use or otherwise, has become useless for the purpose for which it was designed, and is fit *only* for remanufacture. Apparently, the pith of the majority's decision in this case is, that although the print blocks are "old waste," it would be illogical not to treat them the same as if they were in fact "new waste." Consequently, the majority opinion reasons that the print blocks cannot be "taken out" of the (old) waste classification merely because they can be used for another purpose without remanufacture. However, since the print blocks were never old waste in the first instance, the reference to being "taken out" of the waste classification is inappropriate.

In support of its holding, the majority cites P. Silverman & Son v. United States, 27 CCPA 324, C.A.D. 107 (1940), and Rachman Bag Co., Inc. v. United States, 57 Cust.Ct. 465, C.D. 2838 (1966). Neither decision, in my opinion, is applicable to the facts presented in this case, and indeed, counsel for plaintiffs do not rely upon them.

As conceded by the majority, the issue of what constitutes waste was not presented in *Silverman*, and that decision does not, by implication or otherwise, alter the definition of waste previously stated in *Harley* and subsequently restated in *Tower*.

In the *Rachman Bag* case, the merchandise consisted of split and torn burlap bags which, after importation, were cut up and converted into so-called nursery squares and bale wrappers. The court held that such merchandise was waste bagging rather than bags. It is apparent that the mutilated bags were valuable only for their material content (burlap) for conversion into other articles (nursery squares and bale wrappers), and had lost their original character as manufactured articles (bags). Cf. The Midwest Waste Material Co., E. S. Keller Co., Inc. v. United States, 28 Cust.Ct. 8, C.D. 1382 (1951), wherein the court held that certain woven strips of burlap originally designed for use by the armed forces of the United States in the garnishing of nets for camouflage purposes, but no longer devoted to that use and consumed for their fiber content, were dutiable as waste under paragraph 1555, Tariff Act of 1930. The court commented as follows (at page 21):

> * * * It [merchandise] fits precisely within the confines of the definition of waste contained in the *Harley* case, *supra*, as a surplus manufactured article which has become useless for the original purpose for which it was made *and is fit only for remanufacture into something else.* * * * [Emphasis added.]

As distinguished from the torn and split burlap bags in *Rachman Bag*, the print blocks had a value in addition to that of a mere material, and without re-

manufacture had a valuable practical use. Cf. Judge Ford's dissent in Midwest Waste Material Co., *supra*, pages 23–26 (merchandise, without remanufacture, had a valuable practical use, which precluded classification of merchandise as waste, citing *Harley*.) Therefore, the rationale applicable to classifying damaged burlap bags as "waste" was, in my view, improperly extended by the majority to the merchandise involved in this case.

As long as a manufactured article retains its original characteristics sufficiently so that because of them the article remains a saleable and useful product, without remanufacture, it should not, merely by reason of unfitness for its original use, be relegated to the category of waste. In short, the print blocks had an intrinsic and commercial value, aside from their metal value, and were not waste or sold as such.

To buttress its conclusion, the majority states that "[t]he provision for waste, not specially provided for, in paragraph 1555 of the Tariff Act of 1930, is without other limitation," and is contrasted to other provisions of the tariff act, like paragraph 301, which expressly is limited by the phrase "fit only to be remanufactured." But the provision for waste, not specially provided for in paragraph 1457 of the Tariff Act of 1922, was reenacted by Congress in paragraph 1555 of the Tariff Act of 1930 without change. Therefore, it may be presumed that Congress adopted the authoritative judicial construction placed upon the term "waste" in *Harley*, which included the limitation that it be "fit only for remanufacture into something else." Cf. United States v. D. H. Grant & Co., Inc., 47 CCPA 20, C.A.D. 723 (1959); United States v. Pacific Butchers Supply Co., 22 CCPA 355, T.D. 47377 (1934); Dominion Canners, Ltd. v. United States, 12 Ct.Cust.Appls. 90, T.D. 40025 (1924); The Singer Manufacturing Co. v. United States, 33 Cust.Ct. 60, C.D. 1635 (1954). Hence, in construing the term waste, in paragraph 1555, judicial expression as to the common meaning of the term must be read into the statute.

It is my conclusion that *Harley* and many subsequent decisions following it, have included the element of "fit only for remanufacture into something else" as part of the common meaning of the term "waste" in paragraph 1555 of the Tariff Act of 1930. Since the print blocks in this case do not conform to the common meaning of the term waste, I must respectfully dissent from the decision reached by my colleagues.

Inasmuch as the majority found it unnecessary to reach the alternative claim of both parties under paragraph 397, as modified, and hence properly did not discuss the propriety of such claim, it becomes unnecessary for me, of course, to express presently my views concerning that subject.