AMERICAN EXPRESS Co. *et al. v.* UNITED STATES (No. 1023).[1]

DISKS, PARTS OF PHONOGRAPH.

The history of paragraph 468, tariff act of 1909, makes it clear that the parts of phonographs therein provided for must be taken to include phonograph disks.—American Graphophone Co. *v.* Amet (74 Fed., 789).

## United States Court of Customs Appeals, May 26, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7389 (T. D. 32779).

[Affirmed.]

*Comstock & Washburn* for appellants.

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This was an importation of phonograph disks. They are concededly in chief value of gutta-percha. They were assessed by the collector at the port of New York for dutiable purposes as parts of phonographs, gramophones or graphophones, or similar articles under paragraph 468 of the tariff act of 1909, which reads:

468. Phonographs, gramophones, graphophones, and similar articles or parts thereof, forty-five per centum ad valorem.

Protestants, who are the appellants here, make claim that they are properly dutiable as manufactures in chief value of gutta-percha under the provisions of paragraph 464 of said act. The Board of General Appraisers, reasoning upon the merits of the case, held the disks to be parts of phonographs, upon the theory, as stated by the board, that—

The inventive genius of Thomas A. Edison, who conceived and patented the phonograph, in his scheme imparted to the cylinders certain important prescribed functions operating in combination with other parts of the apparatus.

If the question were free from other legal constructive rules, to be determined as by the Board of General Appraisers, we would be inclined to resolve the doubt, which obviously attends the issue, in favor of the importers. There are cases cited in the briefs of counsel on both sides supporting their respective contentions which, while in no case being on all fours with this, would seem to make it one attended with extreme doubt. In another department of the Government, to wit, in patent cases, in the due administration of which law the courts have been called upon to decide the precise question as to whether or not a phonograph or gramophone disk or record is a part of that instrument and the question has been resolved in the affirmative. Notably was this true in American

---

[1] Reported in T. D. 33490 (24 Treas. Dec., 897).

Graphophone Co. v. Amet (74 Fed., 789). Therein Judge Grosscup, district judge for the Northern District of Illinois, sitting in circuit, held with reference to graphophone disks as follows:

To make the graphophone more widely useful the complainants make many records, embodying music, speech, and other sounds, and distribute these, by sale, to the users of the phone. But the record thus distributed remains *an integral part* of the combined mechanism. It is not a product of the machine, but still a part of it. It is not unusual in many mechanisms that some elements of their combination must be more frequently renewed than others. *The sale of such parts* segregated from the machine is only the replenishing of the combination by a substitution of a new element for the one worn out.

See also Leeds & Catlin Co. v. Victor Talking Machine Co. (154 Fed., 58).

It is a matter of common knowledge that many parts of instruments and implements are the product of manufacturing establishments operated solely for the manufacture of such parts and which do not manufacture the instrument itself. This is an economic result. It follows from the demand for certain parts which more easily and rapidly wear out and become useless being greater than that for the more substantial part of the mechanism.

More to the point, however, and controlling here, in our opinion, is the legislative history of this provision. This as applied in accordance with the numerous well-settled decisions of this court would seem to be here controlling. Phonographs, gramophones, and graphophones, and similar instruments were not provided for *eo nomine* in the tariff act of 1897. The question, however, of the proper classification of these instruments indirectly *and parts thereof* directly was an issue before the Board of General Appraisers in G. A. 4971 (T. D. 23195). The Board of General Appraisers therein declined to so classify phonographs as musical instruments, and in so doing proceeded upon the theory that cylinders and records were parts of the phonograph. In any event, that decision alone, it appears from the record, was called to the attention of Congress and unquestionably prompted the enactment of paragraph 468 of the present act. (See Notes on Tariff Revision, 1908, p. 622.) The tariff hearings before the Ways and Means Committee of the House of Representatives corroborate this statement. (Tariff Hearings, 1908–9, pp. 7190, 7193.) Resultant thereupon paragraph 468 appeared in the existing law. In that view it was drafted to include within this paragraph the subject matter of G. A. 4971 (T. D. 23195), which was certain "wax cylinders with musical records" sought therein to be classed as parts of musical instruments. Controlled by this rule of construction, we are constrained to conclude that it was the intention of Congress to include these importations for dutiable purposes within the provisions of paragraph 468 as parts of phonographs.

*Affirmed.*